IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 12-81311-CIV-MIDDLEBROOKS/BRANNON

UNITED STATES COMMODITY
FUTURES TRADING COMMISSION,

        Plaintiff,

v.

HUNTER WISE COMMODITIES, LLC,
*et al.*,

        Defendants.

_____/

Melanie E. Damian, as Receiver of Hunter
Wise Commodities, LLC, Hunter Wise
Services, LLC, Hunter Wise Credit, LLC,
And Hunter Wise Trading, LLC,

        Plaintiff,

v.

Liberty Trading Exchange, LLC,
David Block and Keith Bresee,

        Defendant.

_____/

CASE NO. 9:12-CV-81311-DMM

___ FILED     ___ LODGED
___ RECEIVED   ___ COPY

MAR 1 6 2015

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ B DEPUTY

ANCILLARY CASE NO. _____

## MC-15-00026-PHX

## COMPLAINT

    Plaintiff, Melanie E. Damian, in her capacity as the Court-appointed Receiver ("Plaintiff"

or the "Receiver") for Hunter Wise Commodities, LLC ("HW Commodities"), Hunter Wise

Services, LLC ("HW Services"), Hunter Wise Credit, LLC ("HW Credit"), and Hunter Wise

Trading, LLC ("HW Trading") (collectively, the "HW Entities"), files this Complaint stating

claims for fraudulent transfers and unjust enrichment against Defendants Liberty Trading

Exchange, LLC, David Block and Keith Bresee (collectively "Defendants") and states as follows:

## THE PARTIES

### The Receiver

1.      On February 22, 2013, the United States District Court for the Southern District of Florida (the "Receivership Court") appointed Plaintiff as the Special Monitor and Corporate Manager of the HW Entities and other entity defendants in the action styled *United States Commodity Future Trading Commission v. Hunter Wise Commodities, LLC, et al.*, Case No. 12-81311-CIV-Middlebrooks (the "Receivership Action"). *See* Receivership Action, ECF # 77 (the "Appointment Order").

2.      On February 24, 2013, the Receivership Court further defined and expanded Plaintiff's powers, duties and responsibilities in its Order on Plaintiff's Motion for Preliminary Injunction (the "Preliminary Injunction"). *See id.,* ECF #78.

3.      On May 16, 2014, the Receivership Court entered its Order of Final Judgment, Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief (the "Final Judgment"), which, among other things, granted Plaintiff "full authority to act as an Equity Receiver for the Hunter Wise entity defendants." *See id.,* ECF #306.

### The Defendants

4.      At all times material hereto, Defendant Liberty Trading Exchange LLC was organized under the laws of the State of Arizona, and conducted business with the HW Entities, which conducted business, and obtained funds from customers who reside, in the Southern District of Florida, California and other jurisdictions.

2

5.     At all times material hereto, Defendant David Block was a resident of the State of Arizona who served as a member and managed the operations of Defendant Liberty Trading Exchange LLC including its transactions with the HW Entities.

6.     At all times material hereto, Defendant Keith Bresee was a resident of the State of Arizona who served as a member and managed the operations of Defendant Liberty Trading Exchange LLC including its transactions with the HW Entities.

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 754, and the principles of ancillary or supplemental jurisdiction under Title 28, United States Code, Section 1367.

8.     This Complaint is brought to accomplish the ends sought and directed by the District Court in the Receivership Action, which, among other things, appointed Plaintiff as Special Monitor, Corporate Manager and Equity Receiver and authorized her to commence actions to recover assets of the Receivership Estate.  This action is related to the claims in the Receivership Action, over which this Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  Pursuant to the principles of ancillary jurisdiction or supplemental jurisdiction, this Court has supplemental jurisdiction over the claims set forth herein pursuant to Title 28, United States Code, Section 1367(a).

9.     This Court has personal jurisdiction over Defendant pursuant to Title 28, United States Code, Sections 754 and 1692.  Plaintiff was appointed as Equity Receiver in this District; the instant Complaint is brought to accomplish the objectives of the Appointment Order, the Preliminary Injunction and the Final Judgment; and the property sought by Plaintiff is located in multiple districts.  Plaintiff has complied with the requirements of Sections 754 and 1692.

3

10.     This Court also has personal jurisdiction over Defendants because Defendants received funds from the HW Entities, who were operating, conducting, engaging in, and carrying on a fraudulent business or business venture in, among other locations, the Southern District of Florida. The transfers that Defendants received from the HW Entities were proceeds from the HW Entities' fraudulent scheme.

11.     Venue is also proper in the Southern District of Florida pursuant to Title 28, United States Code, Sections 754 and 1692, because this action is brought to accomplish the objectives of the Appointment Order, the Preliminary Injunction and the Final Judgment and is thus ancillary to the Court's exclusive jurisdiction over the Receivership Estate. Further, certain of the acts described in this Complaint occurred in the Southern District of Florida, and victims of the HW Entities' fraudulent scheme were located in the Southern District of Florida.

## THE RECEIVER'S STANDING
## TO BRING THE CLAIMS ASSERTED HEREIN

12.     The Receiver has standing to bring these claims pursuant to the Court's Appointment Order and Final Judgment [Receivership Action, ECF # 77 and 306, respectively]. The Appointment Order specifically requires the Receiver "[t]o take exclusive custody, control and possession of all funds, property, and other assets in the possession of, or under the control of [the Entity Defendants]." *See* Receivership Action, ECF #77 at ¶ 21.A. The Appointment Order also grants the Receiver full power "to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, lands, leases, books, records, work papers, and records of accounts...." *Id*. The Appointment Order further provides that the Receiver is directed and authorized "to initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in any state, federal or foreign jurisdiction as necessary to carry out the duties pursuant to [the Appointment] Order." *Id*. at ¶ 21.G.

4

13.     The Receiver also has standing to bring this action pursuant to Title 28, United States Code, Section 754, which provides that "[a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof [and] shall have capacity to sue in any district without ancillary appointment[.]"  As set forth above, the Receiver has complied with the requirements set forth in Title 28, United States Code, Sections 754 and 1692.

14.     Further, the Receiver, standing in the HW Entities' shoes, has legal claims as a "creditor" of the HW Entities, as defined by the California Uniform Fraudulent Transfer Act ("UFTA") pursuant to Ann. Cal. Civ. Code §§ 3439.01, *et seq*.

## FACTUAL ALLEGATIONS

### The HW Entities

15.     HW Commodities, LLC originally was organized in 2007 as a California limited liability company.  In January 2010, HW Commodities converted to a Nevada limited liability but continued to run its operations from its headquarters in Irvine, California.  HW Commodities held itself out as "a physical commodity trading company, wholesaler, market maker, back-office support service provider, and finance company" that offers off-exchange financed commodity trading in physical metals.

16.     At all times material hereto, HW Services, HW Credit, and HW Trading were wholly owned subsidiaries of HW Commodities.  HW Credit and HW Trading are Nevada limited liability companies, and HW Services is a California limited liability company.  Together, the HW Entities operated as a common enterprise under common ownership and control from their nerve center in Irvine, California.

5

17.    At all times material hereto, Defendant Liberty Trading Exchange LLC was a retail dealer working to solicit customers and execute financed transactions with the HW Entities.

18.    At all times material hereto, Defendants Block and Bresee were members of Defendant Liberty Trading Exchange LLC in charge of its operations, soliciting customers on its behalf and responsible for carrying out the transactions between Liberty Trading Exchange LLC and the HW Entities.

19.    Defendants Block and Bresee were also subsequent transferees of the Transfers initially transferred from the HW Entities to Defendant Liberty Trading Exchange LLC.

**Overview of the HW Entities' Fraudulent Scheme**

20.    The HW Entities offered retail customers two types of transactions: (1) the purchase or sale of physical precious metals, and (2) off-exchange trading of gold, silver, platinum, palladium, and copper on a leveraged, margined or financed basis. In the latter transactions, the retail customers were led to believe that they purchased physical commodities and paid only a portion of the purchase price and financed the balance of the purchase price. These types of "financed" transactions constituted the vast majority of the HW Entities' business.

21.    The HW Entities used a network of retail dealers and telemarketing firms, like Defendant Liberty Trading Exchange LLC, (the "dealers"), many of which were located in South Florida, to solicit retail customers and execute financed transactions with the HW Entities. The HW Entities also used an intermediary entity, Lloyds Commodities, LLC ("Lloyds"), located in Palm Beach Gardens, Florida, to execute financed transactions between the dealers and the HW Entities. Lloyds functioned principally to accept orders and funds from dealers on behalf of customers and to transmit the orders and funds to the HW Entities. Generally, the customers

6

entered into agreements with their dealers, and the dealers entered into agreements either with HW Commodities or with Lloyds or both. These agreements governed the customers' purchases and sales of the precious metals, as well as the financing and data processing service, and were an integral part of the HW Entities' scheme.

22.     The HW Entities and their dealers' marketing materials and websites misrepresented that (1) retail customers could purchase physical commodities, including gold, silver, copper, platinum, and palladium, by paying as little as 20-25% of the purchase price; (2) the dealers would lend the customers the remaining portion of the purchase price and charge the customer interest on the loan; (3) the customer would receive title to the physical commodities after the financed purchase; and (4) the dealers would store the physical commodities at an independent depository on the customers' behalf and customers would be charged a "storage fee".

23.     After signing account agreements with the dealers, the end customers would place either long (buy) or short (sell) trades to speculate on the price movement of metals. Once the customers agreed to place orders to purchase or sell metals, the dealers contacted the HW Entities or Lloyds, which would then contact the HW Entities, to enter the trades for the customers. The dealers then collected the customer funds and sent them to the HW Entities or to Lloyds, which would forward the funds to the HW Entities.

24.     Customers were charged a commission, a price spread (a mark-up or mark-down from the current price of the metals), interest on the purported loan, and other fees until the long or short trading position was offset. The HW Entities would compensate the dealers and Lloyds with a portion of the fees and charges paid by the customers for the transactions.

25.     The customers' equity increased or decreased as prices of metals fluctuated, while also subject to depletion on a daily basis by interest and service fees. When customers' equity

7

fell below 15% of the value of their total trading position, the customers received margin calls, requiring the customers to deposit additional funds in order to maintain their trading positions. If the customers' equity dropped to 9%, any open trading positions were liquidated and the customers would generally lose their entire investments.

26.     The overwhelming majority of the HW Entities' end customers who entered into financed transactions with the HW Entities, through the dealers or Lloyds, lost money as a result of those transactions, and those losses were compounded by the high commissions and fees that the HW Entities charged. Neither the HW Entities nor its dealers or Lloyds disclosed those losses to customers when soliciting them to open new accounts. Many of the end customers who were victims of the HW Entities' scheme were located in South Florida.

**The Dodd-Frank Act**

27.     On July 16, 2011, Section 742 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (the "Dodd-Frank Act") went into effect. The Dodd-Frank Act broadened the scope of the Commodity Future Trading Commission's ("CFTC") jurisdiction to include financed commodity transactions with retail customers. Specifically, this broadened jurisdiction required that such transactions be executed on an exchange and subjected these transactions to anti-fraud provisions as set forth in Sections 4(a) and 4(b) of the Commodity Exchange Act (the "CEA"), as amended by the Dodd-Frank Act (*see* 7 U.S.C. §§ 2(c)(2)(D), 6(a), 6b, 9, and 15), and the CFTC's regulations promulgated thereunder (*see* 17 C.F.R. §§ 1.1, *et seq.* (2012)). In addition, effective August 15, 2011, Section 753 of the Dodd-Frank Act amended Section 6(c) of the CEA, 7 U.S.C. §§ 9 and 15, broadening the CFTC's anti-fraud jurisdiction as set out in 17 C.F.R. § 180.1.

28.     The Dodd-Frank Act amendments to the CEA require that commodity transactions with individual consumers (like the end customers here) on a leveraged or margined

8

basis or financed by the offeror (like the financed transactions engaged in by the HW Entities) must be done on a regulated commodity exchange. The Dodd-Frank Act allows for exceptions to this requirement if the financed commodities, here the precious metals, are actually delivered to the end customer within twenty-eight (28) days of the transaction or if the applicable contract creates an enforceable obligation to deliver between a seller and a buyer that have the ability to deliver and accept delivery. *See* 7 U.S.C. § 2(c)(2)(D).

### The HW Entities' Violations of the Dodd-Frank Act

29.     The HW Entities claimed to supply physical metals to, and provide financing for, financed metals transactions marketed by their dealers. The HW Entities, however, did not generally buy, sell, loan, store, or transfer physical metals in connection with financed metals transactions. Instead, the HW Entities recorded and tracked customer orders and trading positions, and then managed its exposure to those retail customer's trading positions by trading derivatives, such as futures, forwards, and rolling spot contracts in its own margin trading accounts.

30.     The HW Entities allowed customers to take "long" trading positions through purported purchases of metals, and "short" trading positions through what it called "commodity loans." When it received an order and the necessary customer funds from a dealer or Lloyds, the HW Entities made a book entry in a database reflecting the retail customer's transaction.

31.     The HW Entities would aggregate the funds it received from the dealers and Lloyds and deposit those funds in its own bank accounts. The HW Entities then deposited a portion of those funds in margin trading accounts in the name of a HW Entity with a precious metals supplier or trading institution with which the HW Entities had signed trading account agreements on behalf of the HW Entities.

32.     At no time during the relevant period at issue in this Complaint did the HW
Entities have an inventory of physical precious metals that it sold or loaned to customers in
connection with financed metals transactions. The HW Entities did not (with few exceptions)
pay in full for the purchase of commodities through its margin trading accounts. Instead, the
HW Entities deposited funds with the metals suppliers or trading institutions as margin in order
to trade metals futures or forward contracts on their own behalf. The HW Entities traded in their
margin accounts to manage their exposure to customer orders.

33.     The HW Entities' trading in their margin accounts did not involve the shipment,
receipt, or storage of physical metals. The trading institutions with which the HW Entities
placed their margin trades did not actually deliver any physical commodities to the HW Entities.

34.     The HW Entities did not own, possess, or have title to any metals as a result of its
margin trades, and neither did the HW Entities' customers. Any invested equity that the HW
Entities did have in trading accounts was never assigned to specific end customers nor to their
dealers.

35.     The HW Entities did not actually deliver any physical commodities to any of its
intermediaries (including but not limited to Lloyds), dealers, or any end customers in connection
with financed commodity transactions.

36.     As a result of the above-described business model, put in place, operated, and
overseen by the HW Entities, the HW Entities operated in violation of the Dodd-Frank Act.
Further, the HW Entities' equity derived from its business operations was highly leveraged.

**The CFTC Enforcement Action**

37.     On December 5, 2012, the CFTC filed a complaint against the HW Entities and
related entities including dealers of the HW Entities and their principals, for injunctive and other
equitable relief and penalties under the CEA and the Dodd-Frank Act, alleging, among other

10

things, that the HW Entities offered and executed transactions for the purchase and sale of precious metals in violation of those Acts. *See* Receivership Action, ECF #1.

38.     That same day, the CFTC also filed a Motion for Preliminary Injunction, seeking to enjoin the HW Entities, Mr. Martin, Mr. Jager, and related entities including dealers of the HW Entities and their principals, from continuing their operations and further violations of the CEA and the Dodd-Frank Act, and the appointment of a receiver. *See id.*, ECF #4.

39.     On February 22, 2013, following a hearing on the CFTC's Motion for Preliminary Injunction, the Receivership Court entered the Appointment Order.

40.     On February 25, 2013, the Receivership Court entered the Injunction Order.

41.     Subsequently, Mr. Martin and Mr. Jager appealed the Receivership Court's Injunction Order.

42.     On February 19, 2014, the Receivership Court entered its Order on the Parties' Motions for Summary Judgment, granting the CFTC's Motion for Summary Judgment on Count One of its complaint, determining that the HW Entities, Mr. Martin, Mr. Jager, and certain other defendants violated certain sections of the CEA and the Dodd-Frank Act, and on Count Twelve, determining that the HW Entities failed to register as Futures Commission Merchants in violation of those Acts, and denying the defendants' Counter Motion for Summary Judgment on all Counts of the CFTC's complaint. *See id.*, ECF #281.

43.     On April 15, 2014, the United States Court of Appeals for the Eleventh Circuit entered its opinion affirming the Receivership Court's Injunction Order. *See* 749 F.3d 967 (2014).

44.     On May 16, 2014, after a trial on the remaining Counts of the CFTC complaint, the Receivership Court entered an Opinion and Order in which the Court, among other things, found that the HW Entities "misrepresented facts about the precious metals transactions it

11

oversaw... [and] directly and indirectly led the retail customers to believe metals were stored on their behalf." *See* Receivership Action, ECF #303 at p.31 (as amended on May 22, 2014 at ECF #308). The Court further found that [the HW Entities] failed to inform [retail customers] that the metals it purchased were on a financed basis, it did not own the metals, and the metals, if there were any at all, were not in the retail customers' names." *Id*. Accordingly, the Receivership Court held that the CFTC established by a preponderance of evidence that the HW entities, Mr. Martin and Mr. Jager committed fraud and aided and abetted the Lloyds entity defendants and the dealer defendants in defrauding the end customers, in violation of the CEA, the Dodd-Frank Act, and the CFTC's regulations promulgated thereunder. *See id.*, ECF # 303.

45.     Also on May 16, 2014, the Receivership Court entered its Order of Final Judgment, Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief (the "Final Judgment"), which, among other things, ordered the HW entities and their principals Harold Edward Martin, Jr. and Fred Jager, jointly and severally, to pay restitution in the amount of $52,643,399.19 and a civil monetary penalty in the amount of $55,445,892.39 (which represents triple their monetary gain as a result of their wrongdoing). *See id.,* ECF #306 at pp. 4 and 7.

46.     No party appealed the Receivership Court's Opinion and Order or Final Judgment.

### The Insolvency of the HW Entities

47.     As a result of operating a fraudulent scheme, the HW Entities were insolvent, undercapitalized, and operating at a loss.  From inception, the HW Entities did not have sufficient assets to pay their debts to customers and creditors as those debts became due.

### Transfers to Defendants

48.     From March 30, 2012 to February 12, 2013, HW Credit transferred funds in the amount of $188,560.42 (collectively, the "Transfers") to Defendant Liberty Trading Exchange

LLC. The Transfers originated from HW Credit's bank accounts located in California. *See* Summary of Disbursements, attached hereto as **Exhibit A**.

49.     The Transfers were made in a series of fourteen (14) transfers from HW Credit to Defendant Liberty Trading Exchange LLC.

50.     Upon information and belief, Defendant Liberty Trading Exchange LLC subsequently made transfers of these funds to its members, Defendants Block and Bresee.

51.     The funds comprising the Transfers to the Defendants were funds that HW Credit fraudulently obtained from customers.

52.     Defendants solicited these defrauded customers and received the Transfers as commissions, interest, price mark-ups or mark-downs and other fees, without providing reasonably equivalent value in exchange for those Transfers.

53.     The HW Entities, and thereby the Receivership Estate, have been damaged significantly as a direct and proximate result of the Transfers made to Defendants as alleged above.  Such damages include, but are not limited to, losses due to the dissipation of customer and investor funds for which no reasonably equivalent value was provided and other and further compensatory and consequential damages.

54.     Accordingly, the Receiver brings the instant action in order to collect monies that were improperly transferred, dissipated, misappropriated, or lost from the HW Entities as a result of the fraudulent transfers to, and unjust enrichment of, Defendants.

55.     All conditions precedent to the bringing of this action have been performed or satisfied or have occurred.

56.     This action is brought within the pertinent statutory limitations period.

57.     Given that HW Credit and the other HW Entities, were all operated from their headquarters in Irvine, California, the transactions with Defendants were carried out in California

and the Transfers came from bank accounts located in California, California law applies to the claims brought herein.

## CLAIMS FOR RELIEF

### COUNT I
### AGAINST ALL DEFENDANTS

**(Fraudulent Transfer under Ann. Cal. Civ. Code, § 3439.04(a)(1)
and California Common Law Fraudulent Conveyance)**

58.     Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.     This is a claim to avoid and recover a fraudulent transfer pursuant to Ann. Cal. Civ. Code, § 3439.04(a)(1) and pursuant to California Common Law Fraudulent Conveyance.

60.     As detailed above, HW Credit transferred $94,280.21 to Defendant Liberty Trading Exchange LLC.

61.     Defendant Liberty Trading Exchange LLC received the $94,280.21 from HW Credit without providing reasonably equivalent value in exchange for the Transfers.

62.     At the time that HW Credit made the Transfers, it was operating a fraudulent scheme, was insolvent, and was engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

63.     When HW Credit made the Transfers to Defendant Liberty Trading Exchange LLC, HW Credit intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

64.     Thus, HW Credit had the actual intent to delay, hinder, or defraud creditors, and made the Transfers to delay, hinder, or defraud creditors. Consequently, the Transfers were inherently fraudulent pursuant to Ann. Cal. Civ. Code, § 3439.04(a)(1) and pursuant to California Common Law Fraudulent Conveyance.

65. Upon information and belief, Defendant Liberty Trading Exchange LLC subsequently transferred all or some of the Transfers to its members Defendants Block and Bresee.

66. Because the Transfers were fraudulent under Ann. Cal. Civ. Code, § 3439.04(a)(1) and under California Common Law, the Receiver may avoid the Transfers, and any portion thereof which was subsequently transferred to Defendants Block and Bresee, pursuant to Ann. Cal. Civ. Code, §§ 3439.07(a)(1) and 3439.08(b)(2) and under California Common Law.

67. As a direct and proximate result of HW Credit's fraudulent Transfers to Defendant Liberty Trading Exchange LLC, the Receivership Estate has been diminished in the amount of $94,280.21, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the customers and creditors who were defrauded by the HW Entities.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for the HW Entities, respectfully requests that the Court enter judgment against Defendants: (1) determining that the Transfers from HW Credit to Defendant Liberty Trading Exchange LLC were fraudulent and avoiding those Transfers and any portion thereof which was subsequently transferred to Defendants Block and Bresee; (2) entering a money judgment against Defendants in the full amount of the Transfers to Defendant Liberty Trading Exchange LLC and to Defendants Block and Bresee as subsequent transferees, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

15

## COUNT II

### AGAINST ALL DEFENDANTS

#### (Fraudulent Transfer under Ann. Cal. Civ. Code, §§ 3439.04(a)(2) and 3439.05)

68.    Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

69.    This is a claim to avoid and recover fraudulent transfers, pursuant to Ann. Cal. Civ. Code, §§ 3439.04(a)(2) and 3439.05.

70.    As detailed above, HW Credit transferred $94,280.21 to Defendant Liberty Trading Exchange LLC.

71.    Defendant Liberty Trading Exchange LLC received the Transfers in the total amount of $94,280.21 from HW Credit without providing reasonably equivalent value in exchange for the Transfers.

72.    HW Entities had creditors whose claims arose before HW Credit made the Transfers to Defendant Liberty Trading Exchange LLC.

73.    HW Credit did not receive reasonably equivalent value in exchange for the Transfers to Defendant Liberty Trading Exchange LLC, as detailed above. Indeed, Defendants have made no payments and provided no value to HW Credit or the Receivership Estate, and, thus, Defendants received a profit of $94,280.21 from HW Credit.

74.    When HW Credit made the Transfers to Defendant Liberty Trading Exchange LLC, the assets remaining in HW Credit's business were unreasonably small in relation to the business or transaction.

75.    When HW Credit made the Transfers to Defendant Liberty Trading Exchange LLC, HW Credit intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

76.    Upon information and belief, Defendant Liberty Trading Exchange LLC subsequently transferred all or some of the Transfers to its members Defendants Block and Bresee.

77.    Because the Transfers are fraudulent under Ann. Cal. Civ. Code, §§ 3439.04(a)(2) and 3439.05, the Receiver may avoid the Transfers and any portion thereof subsequently transferred to Defendants Block and Bresee pursuant to Ann. Cal. Civ. Code, §§ 3439.07(a)(1) and 3439.08(b)(2).

78.    As a direct and proximate result of HW Credit's fraudulent Transfers to Defendant Liberty Trading Exchange LLC, the Receivership Estate has been diminished in the amount of $94,280.21 and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the customers and creditors who were defrauded by the HW Entities.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for HW Credit, respectfully requests the Court enter judgment against Defendants: (1) determining that the Transfers from HW Credit to Defendant Liberty Trading Exchange LLC were fraudulent and avoiding those Transfers and any portion thereof which was subsequently transferred to Defendants Block and Bresee; (2) entering a money judgment against Defendants in the full amount of the Transfers to Defendant Liberty Trading Exchange LLC and to Defendants Block and Bresee as subsequent transferees, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

17

## COUNT III

### AGAINST ALL DEFENDANTS

#### (Unjust Enrichment as to the Transfers)

79.     Plaintiff repeats and re-alleges and incorporate by reference the allegations set forth in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

80.     HW Credit conferred a benefit on Defendants when it made the Transfers to Defendant Liberty Trading Exchange LLC in the amount of $94,280.21, all of which were derived from the customers of the HW Entities.

81.     Defendants had knowledge of the benefit they received from HW Credit as a result of the Transfers and voluntarily accepted and retained the benefit conferred.

82.     It is inherently unfair and inequitable that the funds of customers defrauded in HW Credit's fraudulent scheme are retained by and used to personally benefit Defendants, rather than being returned to the Receivership Estate for the benefit of all of the defrauded customers.

83.     As a direct and proximate result of Defendants' retention of the $94,280.21 that HW Credit fraudulently transferred to Defendant Liberty Trading Exchange LLC and which was subsequently transferred to Defendants Block and Bresee, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that Defendants should return the funds they received from HW Credit, and any assets they may have acquired with those funds, to the Receiver for the benefit of all of the defrauded customers.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for HW Credit, respectfully requests the Court enter judgment against Defendants: (1) determining that Defendants were unjustly enriched by virtue of their receipt of the Transfers from HW Credit as initial or subsequent transferees; (2) entering a money judgment against Defendants, in the full amount of the Transfers, and, if necessary, imposing a constructive trust and/or equitable lien on

18

the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

Dated: March 13, 2015

Respectfully submitted,

**DAMIAN & VALORI, LLP**
*Counsel for Receiver*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile:  (305) 371-3965

*/s/ Kenneth Dante Murena*

KENNETH DANTE MURENA, P.A.
FLORIDA BAR NO. 147486

JS 44 (Rev. 12/12)

Case 1:15-cv-21037-XXXX   Document 1-1   Entered on FLSD Docket 03/13/2015   Page 1 of 2

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Melanie E. Damian, as Receiver of Hunter Wise Commodities, LLC, et al. | Liberty Trading Exchange, LLC, David Block and Keith Bresee |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant Maricopa County, AZ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Damian & Valori LLP, 1000 Brickell Avenue, Suite 1020
Miami, FL 33131  (305) 371-3960

Attorneys *(If Known)*

(d) Check County Where Action Arose: ☒ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   ☐ HIGHLANDS

| II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)* | | III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)* | | | | | |
|---|---|---|---|---|---|---|---|
| | | *(For Diversity Cases Only)* | | | *and One Box for Defendant)* | | |
| | | | PTF | DEF | | PTF | DEF |
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care / | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Empl. Ret. Inc Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

| V.  ORIGIN *(Place an "X" in One Box Only)* | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1  Original Proceeding | ☐ 2 Removed from State Court | ☐ 3  Re-filed (See VI below) | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district *(specify)* | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment   ☐ 8 Remanded from Appellate Court |

| VI. RELATED/ RE-FILED CASE(S) *(See instructions)*: | a) Re-filed Case ☐ YES ☒ NO | b) Related Cases ☐ YES ☐ NO |
|---|---|---|
| | JUDGE Donald M. Middlebrooks | DOCKET NUMBER 9:12-cv-81311 |

**VII. CAUSE OF ACTION** Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
Fraudulent Transfer, Unjust Enrichment
LENGTH OF TRIAL via __3__ days estimated (for both sides to try entire case)

| VIII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 94,280.21 | CHECK YES only if demanded in complaint: JURY DEMAND:   ☐ Yes ☒ No |
|---|---|---|---|

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| March 13, 2015 | /s/ Kenneth Dante Murena |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | IFP | JUDGE | MAG JUDGE |
|---|---|---|---|---|

JS 44 Reverse (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.        **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.      **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

VI.     **Related/Refiled Cases.** This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

VII.    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**                    Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VIII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida ▼

| | |
|---|---|
| Melanie E. Damian, as Receiver of Hunter Wise Commodities, LLC, Hunter Wise Services, LLC, Hunter Wise Credit, LLC, and Hunter Wise Trading, LLC <br><br> *Plaintiff(s)* <br><br> v. <br><br> Liberty Trading Exchange, LLC, David Block and Keith Bresee <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Liberty Trading Exchange, LLC
c/o Registered Agent
16150 N. Arrowhead Fountain Drive
Peoria, AZ 85382

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth Dante Murena, Esq.
1000 Brickell Avenue, Suite 1020
Miami, FL 33131

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Southern District of Florida  ▼

| | |
|---|---|
| Melanie E. Damian, as Receiver of Hunter Wise Commodities, LLC, Hunter Wise Services, LLC, Hunter Wise Credit, LLC, and Hunter Wise Trading, LLC <br><br> *Plaintiff(s)* <br> v. <br> Liberty Trading Exchange, LLC, David Block and Keith Bresee <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  David Block
220 River Ridge Drive
Woodland, WA 98674

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Kenneth Dante Murena, Esq.
1000 Brickell Avenue, Suite 1020
Miami, FL 33131

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Southern District of Florida    ▼

| | |
|---|---|
| Melanie E. Damian, as Receiver of Hunter Wise Commodities, LLC, Hunter Wise Services, LLC, Hunter Wise Credit, LLC, and Hunter Wise Trading, LLC | ) ) ) ) ) |
| _____ *Plaintiff(s)* | ) |
| v. | ) )    Civil Action No. |
| Liberty Trading Exchange, LLC, David Block and Keith Bresee | ) ) ) |
| _____ *Defendant(s)* | ) ) ) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Keith Bresee
13741 W. Redfield Rd.
Surprise, AZ 85379-8404

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Kenneth Dante Murena, Esq.
1000 Brickell Avenue, Suite 1020
Miami, FL 33131

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____           _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                    *Server's signature*

                                            _____
                                                    *Printed name and title*


                                            _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

Case 1:15-cv-21037-XXXX   Document 1-5   Entered on FLSD Docket 03/13/2015   Page 1 of 1
CONFIDENTIAL

## Hunter Wise Commodities, LLC, et. al.
### Case No.: 12-CV-81311-Middlebrooks/Brannon
### United States District Court
### Southern District of Florida

### Disbursements to Dealers for All Hunter Wise Entities

**PRELIMINARY DRAFT as of February 12, 2015:**
This is a preliminary draft. It has been prepared based on preliminary information and assumptions. No one may rely on this draft. It is subject to change as additional information becomes available or is clarified.

**Source:** QuickBooks records for HW Commodities, HW Credit, HW Services, HW Trading and IRA Services.

| Entity | Type | Num | Date | Name | Account | Amount |
|--------|------|-----|------|------|---------|--------|
| HW Credit | Check | Wire | 03/30/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (1,356.35) |
| HW Credit | Check | Wire | 04/30/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (2,408.10) |
| HW Credit | Check | Wire | 05/09/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (2,500.00) |
| HW Credit | Check | Wire | 05/17/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (2,500.00) |
| HW Credit | Check | Wire | 05/17/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (3,000.00) |
| HW Credit | Check | Wire | 08/21/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (3,629.58) |
| HW Credit | Check | Wire | 09/19/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (5,000.00) |
| HW Credit | Check | Wire | 09/27/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (59,286.18) |
| HW Credit | Check | Wire | 10/04/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (2,000.00) |
| HW Credit | Check | Wire | 10/11/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (3,000.00) |
| HW Credit | Check | Wire | 10/31/2012 | Liberty Trading Exchange | 1000 · CNB Busin | (1,500.00) |
| HW Credit | Check | Wire | 01/04/2013 | Liberty Trading Exchange | 1000 · CNB Busin | (2,500.00) |
| HW Credit | Check | Wire | 02/04/2013 | Liberty Trading Exchange | 1000 · CNB Busin | (4,000.00) |
| HW Credit | Check | Wire | 02/12/2013 | Liberty Trading Exchange | 1101 · FFB - Segr | (1,600.00) |
| | | | | | **Total:** | (94,280.21) |

**EXHIBIT A**